UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------- X

MAX LUNDT,

                         Plaintiff,   **COMPLAINT**

          -against-

THE CITY OF NEW YORK; A.D.A. GREGORY
SANGERMANO, sued in his individual       ECF Case
capacity; SUPERVISOR POLICE OFFICER JOHN
DOE # 1; DET. DANIEL ALESSANDRINO; and   Jury Trial Demanded
POLICE OFFICERS JOHN DOES # 1-5; the
individual defendant(s) sued individually
and in their official capacities,

                         Defendants.

---------------------------------------- X

## PRELIMINARY STATEMENT

      1.   This is a civil rights action in which plaintiff
seeks relief for the violation of plaintiff's rights secured by
42 U.S.C. § 1983; and the First, Fourth, Fifth, Sixth, and
Fourteenth Amendments to the United States Constitution.
Plaintiff's claims arise from an incident that arose on or about
January 10, 2011.  During the incident, the City of New York,
members of the New York City Police Department ("NYPD"), and
members of the New York County District Attorney's Office
("NYCDA") subjected plaintiff to, among other things, excessive
force, false arrest, unlawful search and seizure, retaliation
for free speech, fabricated evidence, malicious prosecution,

denial of a fair trial, and implementation and continuation of an unlawful municipal policy, practice, and custom.  Plaintiff seeks compensatory and punitive damages, declaratory relief, an award of costs and attorney's fees, pursuant 42 U.S.C. §§ 1988, and such other and further relief as the Court deems just and proper.

## JURISDICTION & VENUE

2.    This action is brought pursuant to 42 U.S.C. § 1983, and the First, Fourth, Fifth, Sixth, and Fourteenth Amendments to the United States Constitution.

3.    Jurisdiction is conferred upon this Court by the aforesaid statutes and 28 U.S.C. §§ 1331 and 1343.

4.    Venue is proper here pursuant to 28 U.S.C. § 1391 because some of the acts in question occurred in New York County, and the City of New York is subject to personal jurisdiction in the Southern District of New York.

## PARTIES

5.    Plaintiff Max Lundt is a resident of the State of New York, New York County.

6.    At all times referred to herein, defendant City of New York was a municipal corporation organized under the laws of the State of New York, which violated plaintiff's rights as described herein.

7.    Defendant City of New York was the employer of the individual defendants, and is and was at all times relevant to this complaint responsible for the policies, practices and customs of the NYCDA and NYPD.

8.    At all times alleged herein, defendant Supervisor Police Officer John Doe # 1 was a New York City Police Officer employed with the 13th Precinct, located in New York County, New York or other as yet unknown NYPD assignment, who violated plaintiff's rights as described herein.

9.    At all times alleged herein, defendant Detective Daniel Alessandrino was a New York City Police Officer employed with the 13th Precinct, located in New York County, New York or other as yet unknown NYPD assignment, who violated plaintiff's rights as described herein.

10.    At all times alleged herein, defendants Police Officers John Doe # 1-5 were New York City Police Officers employed with the 13th Precinct, located in New York County, New York or other as yet unknown NYPD assignment, who violated plaintiff's rights as described herein.

11.    The individual defendant police officers are sued in their individual and official capacities.

12.    At all times referred to herein, defendant A.D.A. Gregory SanGermano was a New York County Assistant

District Attorney who violated plaintiff's rights as descried herein.  He is sued in his individual capacity.

**STATEMENT OF FACTS**

13.   On January 10, 2011, at and in the vicinity of 17 Stuyvesant Oval, New York, New York, and the 13th Precinct located in New York, New York, several police officers, including upon information and belief, defendants Supervisor P.O. John Doe # 1, Det. Alessandrino, and P.O. John Does # 1-5, at times acting in concert, and at times acting independently, committed the following illegal acts against the plaintiff.

14.   On January 10, 2011, at and in the vicinity of 17 Stuyvesant Oval, New York, New York, defendants Supervisor P.O. John Doe # 1, Det. Alessandrino, and P.O. John Does # 1-5, without either consent, an arrest warrant, a lawful search warrant, probable cause, or reasonable suspicion that the plaintiff had committed a crime unlawfully arrested the plaintiff.

15.   Once Supervisor P.O. John Doe # 1, Det. Alessandrino, and P.O. John Does # 1-5 confronted plaintiff, he was not free to disregard their questions, or walk way or leave the scene.

16.   The defendant officers committed excessive force against plaintiff by maliciously, gratuitously, and

unnecessarily grabbing him, and placing excessively tight handcuffs on him.

17.    The defendant officers did not have an objective and/or reasonable basis to use any degree of force against plaintiff, since plaintiff was unarmed, compliant, and did not resist arrest.

18.    Plaintiff was physically injured as a result of the excessive use of force.

19.    Thereafter, the defendant officers and defendant assistant district attorney falsely accused the plaintiff of participating in an alleged assault with a group of individuals on January 8, 2011, who were videotaped leaving 344 East 28th Street, New York, New York, chasing after an alleged victim.

20.    In order to cover up their illegal actions, the defendant officers, pursuant to a conspiracy, falsely and maliciously conspired with the defendant assistant district attorney by falsely stating that the plaintiff had committed various crimes.

21.    The individual defendants falsely stated on repeated occasions, including at arraignment, bail proceedings and other appearances, and to the Grand Jury, that all of the individuals involved in the assault, including the plaintiff, had gathered inside of 344 East 28th Street, and after one of the

victims left that building, he was followed by all of the individuals involved in the assault and robbery, including the plaintiff.  This was a falsehood.

22.   The defendant officers and defendant assistant district attorney falsely stated they had verified these facts by viewing a video surveillance.  This was also a falsehood.

23.   Indeed, after the alleged assault, on January 8, 2011, defendants Det. Alessandrino, and P.O. John Does # 1-5 came to plaintiff's home and questioned him about the assault and the plaintiff told them that he was not involved and explained his alibi.

24.   The plaintiff's alibi consisted of two surveillance tapes.

25.   The first video surveillance tape was from 344 East 28th Street, New York, New York.  The video showed that the plaintiff had left that building approximately ten minutes prior to the individuals who were alleged to have committed the assault.  Moreover, contrary to the individual defendants' false assertions, the videotape showed that the victim was followed by all of the individuals, except the plaintiff.

26.   The second video surveillance tape was from 330 East 26th Street, New York, New York.  The video showed that the

plaintiff entered that building prior to the alleged assault and did not leave that building during the assault.

27.   Nevertheless, the individual defendants failed to confront any potential witnesses and/or victims with the facts as shown on tape so as to procure false and/or suggestive substantiation to arrest plaintiff, and on January 10, 2011, the defendants falsely arrested the plaintiff, while he was walking with his father, and took him to the 13th Precinct for arrest processing.

28.   The plaintiff was eventually removed to Manhattan Central Booking and arraigned at New York County, Supreme Court, and released on bail.

29.   At arraignment on January 11, 2011, it was falsely stated to the New York County, Criminal Court that the defendants were possession of a video surveillance tape from 344 East 28th Street that showed the plaintiff leaving with the other individuals after the victim.  This was a falsehood.

30.   Upon information and belief, defendants Det. Alessandrino and A.D.A. SanGermano, as well as the other individual defendants, investigated the plaintiff's alibi prior to his arrest.  Furthermore, they located, obtained, viewed, and stored the above-mentioned videotapes regarding the prosecution and alibi, prior to the plaintiff's arrest.

31.    Nevertheless, defendants Det. Alessandrino and
A.D.A. SanGermano, as well as the other individual defendants,
knowingly omitted and presented false evidence to support a
false arrest, malicious prosecution and unfair trial against the
plaintiff.

32.    Based on these misrepresentations, the New York
County, Criminal Court set bail, and the plaintiff was released
on a $25,000 cash bail.

33.    Upon information and belief, A.D.A. SanGermano
admitted that prior to the indictment against the plaintiff,
Det. Alessandrino went to 330 East 26th Street, New York, New
York, and 344 East 28th Street, New York, New York and viewed and
copied the alibi and prosecution tapes. Indeed, upon information
and belief, A.D.A. SanGermano supervised and interacted with the
defendant officers, including Det. Alessandrino, in acquiring
this evidence to be used in the prosecution.

34.    Prior to the indictment, A.D.A. SanGermano
claimed that Det. Alessandrino did not see the plaintiff on the
tape 330 East 26th Street tape on the date and time in question.
This was a falsehood.

35.    Upon information and belief, the individual
defendants, including A.D.A. SanGermano and Det. Alessandrino,
conspired to present false evidence before the Grand Jury and

purposely omitted, in part or in total, those portions of the videos that showed the plaintiff leaving 344 East 28th Street approximately ten minutes prior to chase, and that he entered 330 East 26th Street prior to the chase, did not leave 330 East 26th Street, and was not part of the chase.

36.    Upon information and belief, the individual defendants, including A.D.A. SanGermano and Det. Alessandrino, failed to show the Grand Jury that they had viewed a video from 344 East 28th Street that proved that the plaintiff had left the building ten minutes prior to the chase.

37.    Upon information and belief, the individual defendants, including A.D.A. SanGermano and Det. Alessandrino, failed to inform the Grand Jury that they had viewed a video from 330 East 26th Street that showed that the plaintiff had entered that building prior to the chase and did not leave that location.

38.    Upon information and belief, the individual defendants, including A.D.A. SanGermano and Det. Alessandrino, purposely failed to show or inform the Grand Jury about the full extent of the video evidence to secure a false indictment and conviction.

39.    Upon information and belief, the individual defendants, including A.D.A. SanGermano and Det. Alessandrino,

were actually present and participated in the fabrication and/or manipulation of evidence before the Grand Jury.

40.    On February 10, 2011, the plaintiff was arraigned on an indictment and remanded without bail.

41.    In support of the remand, A.D.A. SanGermano stated that to New York County, Supreme Court that he had viewed the videotape from 344 East 28th Street, and saw the plaintiff leave the building with the other individuals after the victim. This was a falsehood.

42.    The New York County, Supreme Court ordered A.D.A. SanGermano to provide the plaintiff with a copy of the tapes from 330 East 26th Street and 344 East 28th Street.

43.    On February 17, 2011, the plaintiff was released on a $100,000 bond.

44.    The plaintiff requested and A.D.A. SanGermano agreed to supply the plaintiff with a copy of the surveillance tapes from 330 East 26th Street and 344 East 28th Street.

45.    In February 2011, A.D.A. SanGermano provided the plaintiff with a copy of the 344 East 28th Street videotape.  The video showed that contrary to the defendants' false assertions, he did, in fact, leave 344 East 28th Street approximately ten minutes prior to the chase, and that he did not participate in the chase.

10

46.    The defendants nevertheless refused to discontinue their unlawful prosecution.

47.    Further, the defendants ignored repeated requests and made various excuses why they could not provide the 330 East 26th Street tape, until the tape was received on April 18, 2011. The video clearly supported plaintiff's alibi, showing that he entered that building prior to the chase and did not leave that building during the assault and robbery.

48.    Eventually, the criminal case against the plaintiff was dismissed in its entirety, terminating in his favor on October 6, 2011.

49.    The aforesaid events are not an isolated incident.  Defendant City of New York is aware (from lawsuits, notices of claim and complaints) that many of the NYPD's officers and NYCDA's assistant district attorneys are insufficiently trained on the proper way to investigate, prosecute, prepare evidence, and treat innocent and/or uninvolved individuals who are found at an incident scene and/or purported to be involved in an investigation.

50.    Defendant City of New York is further aware that such improper training has often resulted in a deprivation of civil rights.  Despite such notice, the City of New York has failed to take corrective action.  This failure caused the

defendants in the present case to injure plaintiff, violate the law, and violate the plaintiff's rights.

51.    Moreover, defendant City of New York was aware prior to the incident that the individual defendants lacked the objectivity, temperament, maturity, discretion, and disposition to be employed.   Despite such notice, defendants has retained these individuals, and failed to adequately train and supervise them.

52.    At all times defendant City of New York by the NYPD and NYCDA, and its agents, servants and/or employees, carelessly, and recklessly trained the individual defendants for the position of police officers and/or assistant district attorneys.

53.    At all times defendant City of New York by the NYPD and NYCDA, and its agents, servants and/or employees, carelessly, and recklessly supervised, controlled, managed, maintained and inspected the activities of the individual defendants.

54.    At all times defendant City of New York by the NYPD and NYCDA, and its agents, servants and/or employees caused, permitted and allowed the individual defendants to act in an illegal, unprofessional, and/or deliberate manner in carrying out their official duties and/or responsibilities.

12

55.    At all times defendant City of New York by the NYPD and NYCDA, and its agents, servants and/or employees carelessly, and recklessly retained in its employ, the individual defendants, who were clearly unfit for their positions, who acted in an illegal, unprofessional, and/or deliberate manner in carrying out their official duties and/or responsibilities.

56.    The occurrence(s) and injuries sustained by plaintiff, were caused solely by, and as a result of the malicious, reckless, and/or intentional conduct of defendant City of New York, and the NYPD and NYCDA, and its agents, servants and/or employees, as set forth above, without provocation on the part of the plaintiff contributing thereto, specifically, the reckless manner in which said defendant hired, trained, supervised, controlled, managed, maintained, inspected and retained the individual defendants.

57.    The individual defendants acted in concert committing the above-described illegal acts toward plaintiff.

58.    The plaintiff did not resist arrest at any time during the above incidents.

59.    The plaintiff did not violate any law, regulation, or administrative code; commit any criminal act; or

act in a suspicious or unlawful manner prior to or during the above incidents.

60.    The individual defendants did not observe plaintiff violate any law, regulation, or administrative code; commit any criminal act; or act in a suspicious or unlawful manner prior to or during the above incidents.

61.    At no time prior to, during or after the above incidents were the individual defendants provided with information, or in receipt of a credible or an objectively reasonable complaint from a third person, that plaintiff had violated any law, regulation, or administrative code; committed any criminal act; or acted in a suspicious or unlawful manner prior to or during the above incidents.

62.    The defendants acted under pretense and color of state law and within the scope of their employment.  Said acts by said defendants were beyond the scope of their jurisdiction, without authority or law, and in abuse of their powers, and said defendants acted willfully, knowingly, and with the specific intent to deprive plaintiff of their rights.

63.    As a direct and proximate result of defendants' actions, plaintiff experienced personal and physical injuries, pain and suffering, fear, an invasion of privacy, psychological

pain, emotional distress, mental anguish, embarrassment, humiliation, and financial loss.

## FIRST CLAIM

### (UNLAWFUL SEARCH AND SEIZURE UNDER FEDERAL LAW)

64.    Plaintiff repeats and realleges all the foregoing paragraphs as if the same were fully set forth at length herein.

65.    Defendants unlawfully stopped and searched plaintiff without a warrant, or consent.

66.    Accordingly, defendants are liable to plaintiff for unlawful search and seizure under 42 U.S.C. § 1983; and the Fourth and Fifth Amendments to the United States Constitution.

## SECOND CLAIM

### (FALSE ARREST UNDER FEDERAL LAW)

67.    Plaintiff repeats and realleges all the foregoing paragraphs as if the same were fully set forth at length herein

68.    Defendants falsely arrested plaintiff without consent, an arrest warrant, a lawful search warrant, probable cause, or reasonable suspicion that plaintiff had committed a crime.

69.    Accordingly, defendants are liable to plaintiff for false arrest under 42 U.S.C. § 1983; and the Fourth and Fifth Amendments to the United States Constitution.

15

## THIRD CLAIM

### (EXCESSIVE FORCE)

70.   Plaintiff repeats and realleges all the foregoing paragraphs as if the same were fully set forth at length herein.

71.   The individual defendants' use of force upon plaintiff, as described herein, and the individual defendants' failure to intervene, was objectively unreasonable.

72.   Accordingly, defendants are liable to plaintiff for using unreasonable and excessive force, pursuant to 42 U.S.C. § 1983; and the Fourth and Fifth Amendments to the United States Constitution.

## FOURTH CLAIM

### (RETALIATION)

73.   Plaintiff repeats and realleges all the foregoing paragraphs as if the same were fully set forth at length herein.

74.   Plaintiff exercised free speech during the incident by, among other things, demanding that the individual defendants explain the basis for their unlawful actions and asserting from the outset that he had an alibi that exonerated him.

75.   Plaintiff's use of free speech was a motivating factor in the individual defendants' decision to falsely arrest plaintiff.

76.    Accordingly, the individual defendants are liable to plaintiff under the First Amendment to the United States Constitution.

## FIFTH CLAIM

### (FABRICATED EVIDENCE)

77.    Plaintiff repeats and realleges all the foregoing paragraphs as if the same were fully set forth at length herein.

78.    The individual defendants, including A.D.A. SanGermano, are liable to plaintiff because they intentionally conspired to fabricate evidence against him, including omitting and/or manipulating videotapes evidence showing his alibi, fabricating testimony, and concealing exculpatory material depriving him of liberty without due process of law.

79.    The individual defendants were on notice that creating fabricated evidence is a clear violation of law because it well established that police officer and prosecutors who knowingly use false evidence at trial to obtain a conviction act unconstitutionally and is redressable in an action for damages under 42 U.S.C. § 1983.

80.    Furthermore, the individual defendants violated the law by making false statements of fact in a certification for a determination of probable cause and/or a conviction.

17

81.    Furthermore, the individual defendants, including A.D.A. SanGermano, violated the law by gathering exculpatory evidence and manipulating such evidence to obtain an indictment and conviction, while performing the function of investigators.

## SIXTH CLAIM

### (DENAIL OF A FAIR TRIAL)

82.    Plaintiff repeats and realleges all the foregoing paragraphs as if the same were fully set forth at length herein.

83.    The individual defendants, including A.D.A. SanGermano, are liable to plaintiff because they intentionally created false information likely to influence a fact finder's or jury's decision, including omitting and/or manipulating videotape taped evidence showing his alibi, fabricating testimony, and concealing exculpatory material, and forwarded that information to prosecutors, a grand jury, and/or court, and presented that information to a jury, thereby violating plaintiff's constitutional right to a fair trial, and the harm occasioned by such an unconscionable action is redressable in an action for damages under 42 U.S.C. § 1983.

## SEVENTH CLAIM

### (MALICIOUS PROSECUTION CLAIM UNDER FEDERAL LAW)

84.    Plaintiff repeats and realleges all the foregoing paragraphs as if the same were fully set forth at length herein.

85.    The individual defendants are liable to plaintiff for malicious prosecution because, pursuant to a conspiracy and acting with malice, the defendants initiated malicious prosecution(s) against plaintiff by knowingly, intentionally, and maliciously providing false statements to prosecutors and/or the court(s), which alleged plaintiff had committed various crimes.

86.    The individual defendants lacked probable cause to believe the above-stated malicious prosecution(s) could succeed.

87.    The individual defendants acted to cover up their illegal and unconstitutional conduct and leverage the plaintiff into providing information to the individual defendants about his co-defendants or possible crimes by initiating the above-stated malicious prosecution(s).

88.    The above-stated malicious prosecution(s) caused a sufficient post-arraignment liberty restraint on plaintiff.

### EIGHTH CLAIM

**(MONELL CLAIM)**

89.    Plaintiff repeats and realleges all the foregoing paragraphs as if the same were fully set forth at length herein.

90.    Defendant City of New York, through a policy, practice and custom, directly caused the constitutional violations suffered by plaintiff.

91.    Upon information and belief, defendant City of New York, at all relevant times, was aware that the defendants were unfit officers and prosecutors who have previously committed the acts alleged herein, have a propensity for unconstitutional conduct, or have been inadequately trained.

92.    Nevertheless, defendant City of New York exercised deliberate indifference by failing to take remedial action.  The City failed to properly train, retrain, supervise, discipline, and monitor the individual defendants and improperly retained and utilized them.  Moreover, upon information and belief, defendant City of New York failed to adequately investigate prior complaints filed against the individual defendants.

93.    Further, defendants City of New York was aware prior to the incident that the individual defendants (in continuation of its illegal custom, practice and/or policy) would stop, arrest and prosecute innocent individuals, based on pretexts and false evidence.

94.    In addition, the following are municipal policies, practices and customs: (a) arresting and prosecuting

20

innocent individuals; (b) fabricating evidence against individuals; and (c) retaliating against individuals who engage in free speech and assert alibis that have been verified by the defendants.

**WHEREFORE**, plaintiff demands a jury trial and the following relief jointly and severally against the defendants: (a) Compensatory damages in an amount to be determined by a jury; (b) Punitive damages in an amount to be determined by a jury; (c) Costs, interest and attorney's fees, pursuant to 42 U.S.C. § 1988; and (d) Such other and further relief as this Court may deem just and proper, including injunctive and declaratory relief.

DATED:    Brooklyn, New York
          March 2, 2012


                         MICHAEL O. HUESTON, ESQ.
                         *Attorney for Plaintiff*
                         16 Court Street, Suite 3301
                         Brooklyn, New York 11241
                         (718) 246-2900
                         mhueston@nyc.rr.com
                         By:


                         ____s/_____
                         MICHAEL O. HUESTON, ESQ.

                         ANDREW S. RENDEIRO, ESQ.
                         *Attorney for Plaintiff*
                         Flamhaft Levy Hirsch & Rendeiro LLP
                         16 Court Street, Suite 3301
                         Brooklyn, New York 10118
                         (718) 237-1900
                                21