UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------- X

MAX LUNDT,

                       Plaintiff,    **SECOND AMENDED**
                                        **COMPLAINT**

              -against-             12-cv-1737-DLC-FM

THE CITY OF NEW YORK; A.D.A. GREGORY
SANGERMANO, sued in his individual
capacity; SUPERVISOR POLICE OFFICER JOHN    ECF Case
DOE # 1; DET. DANIEL ALESSANDRINO; and
POLICE OFFICERS JOHN DOES # 1-5; the    Jury Trial Demanded
individual defendant(s) sued individually
and in their official capacities,

                       Defendants.

---------------------------------------- X

### PRELIMINARY STATEMENT

      1.    This is a civil rights action in which plaintiff
seeks relief for the violation of plaintiff's rights secured by
42 U.S.C. § 1983, and the First, Fourth, Sixth, and Fourteenth
Amendments to the United States Constitution.  Plaintiff's
claims arise from an incident that occurred on or about January
11, 2011.  During the incident, the City of New York, members of
the New York City Police Department ("NYPD"), and the New York
County District Attorney's Office ("NYCDA") subjected plaintiff
to, among other things, excessive force, false arrest, unlawful
search and seizure, retaliation for free speech, denial of a
fair trial, malicious prosecution, unreasonable detention, and

implementation and continuation of an unlawful municipal policy, practice, and custom.  Plaintiff seeks compensatory and punitive damages, declaratory relief, an award of costs and attorney's fees, pursuant 42 U.S.C. §§ 1988, and such other and further relief as the Court deems just and proper.

**JURISDICTION & VENUE**

2.    This action is brought pursuant to 42 U.S.C. § 1983, and the First, Fourth, Fifth, Sixth, and Fourteenth Amendments to the United States Constitution.

3.    Jurisdiction is conferred upon this Court by the aforesaid statutes and 28 U.S.C. §§ 1331 and 1343.

4.    Venue is proper here pursuant to 28 U.S.C. § 1391 because some of the acts in question occurred in New York County, and the City of New York is subject to personal jurisdiction in the Southern District of New York.

**PARTIES**

5.    Plaintiff Max Lundt is a resident of the State of New York, New York County.

6.    At all times referred to herein, defendant City of New York was a municipal corporation organized under the laws of the State of New York, which violated plaintiff's rights as described herein.

7.    Defendant City of New York was the employer of the individual defendants, and is and was at all times relevant to this complaint responsible for the policies, practices and customs of the NYCDA and NYPD.

8.    At all times alleged herein, defendant Supervisor Police Officer John Doe # 1 was a New York City Police Officer employed with the 13th Precinct, located in New York County, New York or other as yet unknown NYPD assignment, who violated plaintiff's rights as described herein.

9.    At all times alleged herein, defendant Detective Daniel Alessandrino was a New York City Police Officer employed with the 13th Precinct, located in New York County, New York or other as yet unknown NYPD assignment, who violated plaintiff's rights as described herein.

10.    At all times alleged herein, defendants Police Officers John Doe # 1-5 were New York City Police Officers employed with the 13th Precinct, located in New York County, New York or other as yet unknown NYPD assignment, who violated plaintiff's rights as described herein.

11.    The individual defendant police officers are sued in their individual and official capacities.

12.     At all times referred to herein, defendant A.D.A. Gregory SanGermano was a New York County Assistant

3

District Attorney who violated plaintiff's rights as descried herein.  He is sued in his individual capacity.

## STATEMENT OF FACTS

**The Incident**

  13.  On January 8, 2011, two individuals were subjected to a vicious attack in front of 344 East 28th Street, New York, New York.

  14.  The victims were outnumbered and chased, punched, kicked, stomped, and hit with baseball bats by their attackers.

  15.  The victims were also robbed.

  16.  Police interviewed the first victim on the date of the attack, and they reported that the victim described his attackers as two male blacks and one Hispanic male.

  17.  Police interviewed the second victim on the date of the attack, and they reported that the victim described his attackers as a group of 11 to 13 individuals belonging to a gang known as the Brotherhood Crew.  No other description was given in the report.

  18.  Det. Alessandrino was assigned the case.

  19.  The police reports from January 8, 2011 do not indicate what, if any, identification procedures were conducted regarding the suspects.

20.    On January 8, 2011, defendants Det. Alessandrino and P.O. John Does # 1-5 went to Lundt's home and questioned him about the assault.

21.    Lundt was a suspect in the attack based on the police and prosecution's investigation.

22.    Det. Alessandrino and A.D.A. SanGermano were searching for clues and corroboration that might lead to a recommendation for an arrest.

23.    Lundt told the police that he was not involved and informed them that he had an alibi that could be corroborated.  Lundt told the police that he had left 344 East 28th Street (the scene of the attack) ten minutes before the attack and entered 330 East 26th Street to visit a friend.

24.    This was a readily verifiable alibi that the police and the prosecution had a duty and responsibility to investigate.

25.    Working video surveillance cameras were located at both addresses that could be used to corroborate Lundt's alibi.

26.    After the interview, the police and the prosecution continued to gather and piece together evidence for indications of Lundt's criminal conduct and to determine the perpetrators of the attack.

5

27. During this initial phase of the case, Det. Alessandrino and A.D.A. SanGermano were searching for corroboration of Lundt's guilt.

28. During this phase of the case, Det. Alessandrino and A.D.A. SanGermano gathered evidence against the perpetrators, and concluded that the attack was born out of a rivalry between two neighborhood gangs, the Brotherhood Crew and the Money Boys.

29. Det. Alessandrino and A.D.A. SanGermano also concluded that Lundt was a significant instigator of the attack and a member of the Brotherhood Crew.

30. Det. Alessandrino and A.D.A. SanGermano knew that there were surveillance cameras in the locations where the attack occurred.

31. Det. Alessandrino and A.D.A. SanGermano obtained and viewed the video surveillance tapes from these cameras.

32. Det. Alessandrino and A.D.A. SanGermano stored the video surveillance tapes in their offices.

33. Det. Alessandrino and A.D.A. SanGermano used the videos surveillance tapes to corroborate their case against Lundt.

34. However, the two video surveillance tapes actually exonerated Lundt and proved his alibi, but Det.

6

Alessandrino and A.D.A. SanGermano suppressed these facts from Lundt and his defense lawyer.

35.    The first video surveillance tape was from 344 East 28th Street, New York, New York.  The video showed that Lundt left that building approximately ten minutes prior to the individuals who were alleged to have committed the assault and that the victim was followed by all of the individuals except Lundt.

36.    The second video surveillance tape was from 330 East 26th Street, New York, New York.  The video showed that Lundt entered that building prior to the alleged assault and did not leave that building during the assault.

37.    The individual defendants, including A.D.A. SanGermano and Det. Alessandrino, knew that the video from 344 East 28th Street proved that Lundt had left the building ten minutes prior to the attack.

38.    The individual defendants, including A.D.A. SanGermano and Det. Alessandrino, knew that the video from 330 East 26th Street showed that Lundt had entered that building prior to the attack and did not leave that location.

39.    Nevertheless, defendants Det. Alessandrino and A.D.A. SanGermano, as well as the other individual defendants, knowingly omitted and presented false evidence to support a

false arrest, malicious prosecution and unfair trial against Lundt.

40.   In addition, the individual defendants failed to confront any witnesses and/or victims with the facts as shown on videotape.  Upon information and belief, they did this to procure a false basis and/or suggestive identification to arrest and prosecute Lundt.

41.   The case against Lundt proceeded, and on or about January 11, 2011, at and in the vicinity of 17 Stuyvesant Oval, New York, New York, defendants Supervisor P.O. John Doe # 1, Det. Alessandrino, and P.O. John Does # 1-5, without either consent, an arrest warrant, probable cause, or reasonable suspicion arrested Lundt, while he was walking with his father.

42.   Once Supervisor P.O. John Doe # 1, Det. Alessandrino, and P.O. John Does # 1-5 confronted Lundt, he was not free to disregard their questions, or walk away or leave the scene.

43.   The defendant officers committed excessive force against Lundt by maliciously, gratuitously, and unnecessarily grabbing him, and placing excessively tight handcuffs on him, which they did not loosen after Lundt requested that they do so.

44.   The defendant officers did not have an objective and/or reasonable basis to use any degree of force against

Lundt, since Lundt was unarmed, compliant, and did not resist arrest.

45.   Lundt was physically injured as a result of the excessive use of force.

46.   Lundt was taken to the 13th Precinct for arrest processing, and then Manhattan Central Booking for arraignment on a criminal complaint.

47.   Det. Alessandrino's arrest report regarding Lundt does not indicate what, if any, identification procedures were used subsequent to Lundt's arrest.  Apparently, neither a show up procedure nor line up was conducted.

48.   Defendant police officers maliciously initiated a baseless prosecution and an unfair trial against Lundt by drafting police reports and signing a criminal court complaint that falsely accused Lundt of participating in an alleged assault with a group of individuals on January 8, 2011.

49.   The defendant assistant district attorney maliciously initiated a baseless prosecution and an unfair trial against Lundt by drafting or assisting in the drafting of a criminal court complaint that falsely accused Lundt of participating in an alleged assault with a group of individuals on January 8, 2011.

50.    The defendants drafted and submitted the police reports and signed a sworn criminal court complaint prior to any grand jury action to subject Lundt to a malicious prosecution and an unfair trial.

51.    The individual defendant officers falsely stated in police reports and in a sworn criminal court complaint that all of the individuals involved in the assault, including Lundt, had gathered inside of 344 East 28th Street, and attacked the victims.

52.    On January 11, 2011, Lundt was arraigned and released on a $25,000 cash bail.

53.    At this arraignment, the prosecution falsely stated that the police and prosecution were in possession of videotapes that corroborated the charges.  This was a falsehood designed to create an unjustified post arraignment restraint on Lundt's liberty and unreasonable detention.

54.    After this first arraignment, Lundt's defense attorney discussed the case with A.D.A. SanGermano and in particular Lundt's alibi.

55.    Lundt's defense attorney told A.D.A. SanGermano that Lundt was not present when the attack took place and told SanGermano exactly where Lundt was.

56.   Lundt's defense attorney explained to A.D.A. SanGermano that numerous people agreed that Lundt was not present during the attack.

57.   A.D.A. SanGermano told Lundt's defense lawyer that Det. Alessandrino went to 330 East 26th Street, and 344 East 28th Street and viewed and copied the alibi and prosecution tapes.  Upon information and belief, A.D.A. SanGermano supervised and interacted with the defendant officers, including Det. Alessandrino, in acquiring these tapes during this investigation phase of the case.

58.   A.D.A. SanGermano told Lundt's defense attorney that Lundt was not on the tape from 330 East 26th Street.

59.   The individual defendants, including A.D.A. SanGermano and Det. Alessandrino, initiated a malicious prosecution prior to any grand jury action by suppressing and denying Lundt's defense lawyer access to the videotapes that showed him leaving 344 East 28th Street approximately ten minutes before the attack and entering 330 East 26th Street.

60.   Upon information and belief, the individual defendants, including A.D.A. SanGermano and Det. Alessandrino, manipulated the video evidence to secure Lundt's malicious prosecution and unfair trial.

61.    Thereafter, on February 10, 2011, Lundt was arraigned on an indictment and remanded without bail.

62.    At that arraignment, A.D.A. SanGermano requested Lundt's remand, in part, based on new gang attacks in the area, which Lundt was not involved since he was away at college. Lundt was never arrested or prosecuted for these new attacks.

63.    Arguing against remand, Lundt's defense lawyer explained Lundt's alibi regarding the January 8, 2011 attack to the New York County, Supreme Court, stating that while Lundt may have been present at the building where numerous people were prior to the incident, Lundt left before the attack began.

64.    In support of the remand, A.D.A. SanGermano, falsely stated that the police and prosecution had viewed the videotape from 344 East 28th Street, and saw Lundt leave the building with the other individuals after the victim.

65.    Specifically, A.D.A. SanGermano stated that Lundt was a prominent player both being one of the closest in the physical space to the victims and being the one to initially approach the victims.

66.    A.D.A. SanGermano stated to the court that Lundt had been questioned by the detective and admitted that he had been hanging out downstairs with his friends, but that he

claimed that he went to his friend's apartment prior to the attack.

67.    A.D.A. SanGermano stated that Lundt gave his friend's address to the detective, and the detective secured the video from 330 East 26th Street.

68.    A.D.A. SanGermano stated that although Lundt claimed he was not involved in the attack, the police and prosecution had the video and they saw that Lundt was not at 330 East 26th Street, thereby discrediting his alibi.

69.    The New York County, Supreme Court ordered A.D.A. SanGermano to provide Lundt's attorney with a copy of the tapes from 330 East 26th Street and 344 East 28th Street.

70.    On February 14, 2011, Lundt's defense lawyer sent a letter to A.D.A. SanGermano requesting the aforementioned tapes.

71.    On February 15, 2011, Lundt's defense lawyer sent a letter to A.D.A. SanGermano where he memorialized A.D.A. SanGermano's false claim that Lundt was not on the 330 East 26th Street video.

72.    On February 17, 2011, Lundt was released on a $100,000 bond after his defense lawyer submitted a writ of habeas corpus.

73.    In February 2011, A.D.A. SanGermano provided Lundt's attorney with a copy of the 344 East 28th Street videotape.  The video showed (contrary to the false claims of the prosecution and police) that Lundt did leave 344 East 28th Street approximately ten minutes prior to the attack.

74.    On March 1, 2011, Lundt's defense lawyer sent a letter to A.D.A. SanGermano that he had received the 344 East 28th Street videotape, but not the 330 East 26th Street videotape.

75.    On March 10, 2011, Lundt's defense lawyer sent another letter to A.D.A. SanGermano, stating that he had not yet received the critical 330 East 26th Street videotape.

76.    On March 17, 2011, Lundt's defense lawyer sent another letter to A.D.A. SanGermano, stating that he had learned that the videos from 330 East 26th Street had been erased and that the 344 East 28th Street videotape showed that Lundt had left the building ten minutes before the attack.

77.    On April 7, 2011, Lundt's defense lawyer sent a third letter to A.D.A. SanGermano stating that he had not yet received a response to Lundt's defense motions or the 330 East 26th Street videotape.

78.    On April 13, 2011, Lundt's defense lawyer sent a letter to A.D.A. SanGermano where he memorialized that the prosecutor had stated that he would send the 330 East 26th Street

14

videotape by April 7, 2011, but that defense counsel had not received it.

79.    On April 14, 2011, after an adjourned court appearance in the case, Lundt's defense lawyer insisted on viewing and having a copy made of the 330 East 26th Street video tape that same day at the District Attorney's Office, and he went with A.D.A. SanGermano to his office.

80.    While in his office, A.D.A. SanGermano claimed to the defense lawyer that he could not play the video even though he had viewed the tape previously.

81.    A.D.A. SanGermano then called Det. Alessandrino in the presence of defense counsel and requested a new copy of the video.  A.D.A. SanGermano told defense counsel that, in his phone conversation with Det. Alessandrino, and Det. Alessandrino repeated that Lundt was not on the video.

82.    Still at the office, A.D.A. SanGermano told Lundt's attorney that with respect to the 344 East 28th Street videotape that while he believed it was Lundt on the videotape, others in his office had disagreed.

83.    On April 18, 2011, Lundt's defense attorney finally received the 330 East 26th Street videotape.  The video completely supported Lundt's alibi by showing that he entered

15

that building prior to the attack and did not leave the building during the attack.

       84.   On April 20, 2011, Lundt's defense attorney sent a letter to A.D.A. SanGermano that the 330 East 26th Street videotape established Lundt's alibi.

       85.   On April 26, 2011, Lundt's defense attorney filed a reply motion detailing erroneous testimony in the grand jury.

       86.   On June 2, 2011, A.D.A. SanGermano indicated to Lundt's defense attorney that they case against Lundt was going to be dismissed.

       87.   On June 16, 2011, A.D.A. SanGermano indicated to Lundt's defense attorney that they case against Lundt was going to be dismissed.

       88.   On June 16, 2011, Lundt's bail was exonerated.

       89.   On August 4, 2011, A.D.A. SanGermano indicated to Lundt's defense attorney that they case against Lundt was going to be dismissed.

       90.   In August 2011, Lundt returned to college and was told that he would not be allowed to register because of the still pending felony case.

       91.   At Lundt's defense attorney's insistence, A.D.A. SanGermano sent the school a letter to Lundt's school verifying his intention to dismiss the case against Lundt.

16

92.    On October 6, 2011, the criminal case against Lundt was dismissed in its entirety, terminating in his favor.

**General Allegations**

93.    The aforesaid violations of plaintiff's rights are not an isolated incident.  Defendant City of New York is aware from lawsuits, notices of claim and complaints that many members of the NYPD and NYCDA are insufficiently trained on the proper way to investigate and prosecute crimes.

94.    Defendant City of New York is further aware that such improper training has often resulted in a deprivation of civil rights.  Despite such notice, the City of New York has failed to take corrective action.  This failure caused the defendants to violate plaintiff's rights and injure plaintiff.

95.    Moreover, defendant City of New York was aware prior to the incident that the individual defendants lacked the objectivity, temperament, maturity, discretion, and disposition to be employed.  Despite such notice, defendants have retained these individuals, and failed to adequately train and supervise them.

96.    At all times defendant City of New York by the NYPD and NYCDA, and its agents, servants and/or employees, carelessly, and recklessly trained the individual defendants for

the position of police officers and/or assistant district attorneys.

97.   At all times defendant City of New York by the NYPD and NYCDA, and its agents, servants and/or employees, carelessly, and recklessly supervised, controlled, managed, maintained and inspected the activities of the individual defendants.

98.   At all times defendant City of New York by the NYPD and NYCDA, and its agents, servants and/or employees caused, permitted and allowed the individual defendants to act in an illegal, unprofessional, and/or deliberate manner in carrying out their official duties and/or responsibilities.

99.   At all times defendant City of New York by the NYPD and NYCDA, and its agents, servants and/or employees carelessly, and recklessly retained in its employ, the individual defendants, who were clearly unfit for their positions, who acted in an illegal, unprofessional, and/or deliberate manner in carrying out their official duties and/or responsibilities.

100.   The occurrence(s) and injuries sustained by plaintiff, were caused solely by, and as a result of the malicious, reckless, and/or intentional conduct of defendant City of New York, and the NYPD and NYCDA, and its agents,

servants and/or employees, as set forth above, without
provocation on the part of plaintiff contributing thereto,
specifically, the reckless manner in which said defendant hired,
trained, supervised, controlled, managed, maintained, inspected
and retained the individual defendants.

101.   The individual defendants acted in concert
committing the above-described illegal acts toward plaintiff.

102.   The plaintiff did not violate any law,
regulation, or administrative code; commit any criminal act; or
act in a suspicious or unlawful manner prior to or during the
above incidents.

103.   At no time prior to, during or after the above
incidents were the individual defendants provided with
information, or in receipt of a credible or an objectively
reasonable complaint from a third person, that plaintiff had
violated any law, regulation, or administrative code; committed
any criminal act; or acted in a suspicious or unlawful manner
prior to or during the above incidents.

104.   The defendants acted under pretense and color of
state law and within the scope of their employment.  Said acts
by said defendants were beyond the scope of their jurisdiction,
without authority or law, and in abuse of their powers, and said

defendants acted willfully, knowingly, and with the specific intent to deprive plaintiff of his rights.

105.  As a direct and proximate result of defendants' actions, plaintiff experienced personal and physical injuries, pain and suffering, fear, an invasion of privacy, psychological pain, emotional distress, mental anguish, embarrassment, humiliation, and financial loss.

106.  The individual defendants, at times acted in concert, and at times acted independently in committing the aforementioned illegal acts against plaintiff.

<u>**FIRST CLAIM**</u>

**(UNLAWFUL SEARCH AND SEIZURE UNDER FEDERAL LAW)**

107.  Plaintiff repeats and realleges all the foregoing paragraphs as if the same were fully set forth at length herein.

108.  Defendants unlawfully stopped and searched plaintiff without a warrant, or consent.

109.  Accordingly, defendants are liable to plaintiff for unlawful search and seizure under 42 U.S.C. § 1983, and the Fourth Amendment to the United States Constitution.

<u>**SECOND CLAIM**</u>

**(FALSE ARREST UNDER FEDERAL LAW)**

110.  Plaintiff repeats and realleges all the foregoing paragraphs as if the same were fully set forth at length herein.

20

111. Defendants arrested plaintiff without consent, an arrest warrant, a lawful search warrant, probable cause, or reasonable suspicion that plaintiff had committed a crime.

112. Accordingly, defendants are liable to plaintiff for false arrest under 42 U.S.C. § 1983, and the Fourth Amendment to the United States Constitution.

### THIRD CLAIM

### (EXCESSIVE FORCE – POLICE OFFICERS)

113. Plaintiff repeats and realleges all the foregoing paragraphs as if the same were fully set forth at length herein.

114. The defendant police officers' use of force upon plaintiff, as described herein, and the individual defendant police officers' failure to intervene, was objectively unreasonable.

115. Accordingly, the police officers are liable to plaintiff for using unreasonable and excessive force, pursuant to 42 U.S.C. § 1983, and the Fourth Amendment to the United States Constitution.

### FOURTH CLAIM

### (RETALIATION)

116. Plaintiff repeats and realleges all the foregoing paragraphs as if the same were fully set forth at length herein.

117. Plaintiff exercised free speech during the incident by, among other things, demanding that the individual defendants explain the basis for their unlawful actions, asserting from the outset that he had an alibi that exonerated him, and refusing to cooperate against his criminal case co-defendants or become an informant.

118. Plaintiff's use of free speech was a motivating factor in the individual defendants' decision to falsely arrest, maliciously prosecute, and unfairly try plaintiff.

119. Accordingly, the individual defendants are liable to plaintiff under the First Amendment to the United States Constitution.

## FIFTH CLAIM

### (DENIAL OF A FAIR TRIAL)

120. Plaintiff repeats and realleges all the foregoing paragraphs as if the same were fully set forth at length herein.

121. The individual defendants are liable to plaintiff because they intentionally conspired to fabricate evidence against him, including omitting and/or manipulating videotapes evidence showing his alibi, fabricating testimony, and concealing exculpatory material depriving him of liberty without due process of law.

122.   Furthermore, the individual defendants violated the law by making false statements by drafting and signing a sworn criminal court complaint and false police reports.

123.   Furthermore, the individual defendants violated the law by gathering exculpatory evidence and manipulating such evidence to obtain a prosecution and unjust conviction, while performing the function of investigators.

124.   The individual defendants were on notice that creating fabricated evidence is a clear violation of law because it is well established that individuals who knowingly use false evidence at trial to obtain a conviction act unconstitutionally and is redressable in an action for damages under 42 U.S.C. § 1983.

125.   The individual defendants are also liable to plaintiff because they intentionally created false information likely to influence a fact finder's or jury's decision by drafting and signing a sworn criminal court complaint and police reports, omitting and/or manipulating videotape taped evidence to suppress plaintiff's alibi, fabricating testimony and evidence, suppressing and concealing exculpatory material and evidence, and forwarding and presenting false information to a court thereby violating plaintiff's constitutional right to a fair trial, and the harm occasioned by such an unconscionable

23

action is redressable in an action for damages under 42 U.S.C. §
1983.

## SIXTH CLAIM

### (MALICIOUS PROSECUTION UNDER FEDERAL LAW)

126.  Plaintiff repeats and realleges all the foregoing
paragraphs as if the same were fully set forth at length herein.

127.  The individual defendants are liable to plaintiff
for malicious prosecution because prior to any grand action,
with intent, knowledge, and malice, the defendants initiated a
malicious prosecution against plaintiff by drafting and signing
a sworn criminal court complaint and police reports that
provided false information to the court, alleging plaintiff had
committed various crimes.

128.  The individual defendants lacked probable cause
to believe the above-stated malicious prosecution could succeed.

129.  The individual defendants initiating the above-
stated malicious prosecution to cover up their illegal and
unconstitutional conduct and force plaintiff into informing on
his criminal case co-defendants and other individuals.

130.  The above-stated malicious prosecution caused a
sufficient post-arraignment liberty restraint on plaintiff.

24

## SEVENTH CLAIM

### (UNREASONABLE DETENTION)

131.  Plaintiff repeats and realleges all the foregoing paragraphs as if the same were fully set forth at length herein.

132.  The individual defendants are liable, under 42 U.S.C. § 1983 and the Fourth Amendment, to plaintiff because plaintiff had a right to be free from continued detention stemming from the mishandling or suppression of exculpatory evidence, and the individual defendants' refusal to investigate available exculpatory evidence.  Accordingly, individual defendants violated plaintiff's right to be free from an unreasonable detention and their conduct shocks the conscience.

## EIGHTH CLAIM

### (MONELL CLAIM)

133.  Plaintiff repeats and realleges all the foregoing paragraphs as if the same were fully set forth at length herein.

134.  Defendant City of New York, through a policy, practice and custom, directly caused the constitutional violations suffered by plaintiff.

135.  Upon information and belief, defendant City of New York, at all relevant times, was aware that the defendants were unfit officers and prosecutors who have previously

25

committed the acts alleged herein, have a propensity for unconstitutional conduct, or have been inadequately trained.

136.   Nevertheless, defendant City of New York exercised deliberate indifference by failing to take remedial action.  The City failed to properly train, retrain, supervise, discipline, and monitor the individual defendants and improperly retained and utilized them.  Moreover, upon information and belief, defendant City of New York failed to adequately investigate prior complaints filed against the individual defendants.

137.   Further, defendants City of New York was aware prior to the incident that the individual defendants (in continuation of its illegal custom, practice and/or policy) would stop, arrest and prosecute innocent individuals, based on pretexts and false evidence.

138.   In addition, the following are municipal policies, practices and customs: (a) arresting and prosecuting innocent individuals; (b) fabricating evidence against individuals; and (c) retaliating against individuals who engage in free speech and assert alibis that have been verified by the defendants.

**WHEREFORE,** plaintiff demands a jury trial and the following relief jointly and severally against the defendants: (a) Compensatory damages in an amount to be determined by a jury; (b) Punitive damages in an amount to be determined by a jury; (c) Costs, interest and attorney's fees, pursuant to 42 U.S.C. § 1988; and (d) Such other and further relief as this Court may deem just and proper, including injunctive and declaratory relief.

DATED:     Brooklyn, New York
           October 5, 2012

                              MICHAEL O. HUESTON, ESQ.
                              *Attorney for Plaintiff*
                              16 Court Street, Suite 3301
                              Brooklyn, New York 11241
                              (718) 246-2900
                              mhueston@nyc.rr.com
                              By:


                              ____s/_____
                              MICHAEL O. HUESTON, ESQ.

                              ANDREW S. RENDEIRO, ESQ.
                              *Attorney for Plaintiff*
                              Flamhaft Levy Hirsch & Rendeiro LLP
                              16 Court Street, Suite 3301
                              Brooklyn, New York 11241
                              (718) 237-1900

27