UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------- X
                                      :
MAX LUNDT,                            :
                                      :
                    Plaintiff,        :        12 Civ. 1737 (DLC)
                                      :
        -v-                           :        OPINION AND ORDER
                                      :
THE CITY OF NEW YORK; SUPERVISOR      :
POLICE OFFICER JOHN DOE #1; DET.      :
DANIEL ALESSANDRINO; and POLICE       :
OFFICERS JOHN DOES # 1-5; the         :
individual defendant(s) sued          :
individually and in their official    :
capacities,                           :
                                      :
                    Defendants.       :
                                      :
------------------------------------- X

Appearances:

For plaintiff:

Michael O. Hueston
Andrew S. Rendeiro
Flamhaft Levy Hirsch & Rendeiro LLP
16 Court Street, Suite 3301
Brooklyn, NY 11241

For defendants City of New York and
Det. Daniel Alessandrino:

Michael A. Cardozo
Susan Scharfstein
New York City Law Department
100 Church Street
New York, NY 10007

1

DENISE COTE, District Judge:

In his second amended complaint ("Complaint"), Max Lundt ("Lundt") brings claims in this Section 1983 action against defendants the City of New York ("City"), Assistant District Attorney Gregory Sangermano ("ADA Sangermano"), and Det. Daniel Alessandrino ("Alessandrino") arising out of his arrest and prosecution by state authorities.  The claims against ADA Sangermano have been dismissed based on the affirmative defense of absolute immunity.  The City and Alessandrino have moved to dismiss the remaining claims.  For the reasons stated below, their motion is granted.

BACKGROUND

The following facts are taken from the Complaint.  The claims in this action arise from a vicious attack on January 8, 2011 on two victims in front of a building at 344 East 28th Street ("344") in the New York City.  The victims were interviewed by the police.  One victim described his attackers as two black males and one Hispanic male.  The second victim described the attackers as 11 to 13 members of the Brotherhood Crew.

Lundt was a suspect in the attack.  On the day of the attack, Alessandrino and other officers went to Lundt's home and questioned him about the assault.  Lundt denied being involved

2

in the attack and said he had an alibi.  Lundt told the police that he had left 344 ten minutes before the attack and had entered the building at 330 East 26th Street ("330") to visit a friend.  The Complaint asserts that working video surveillance cameras were located at both 344 and 330, and could have been used to corroborate Lundt's alibi.

During the ensuing investigation, Alessandrino and ADA Sangermano determined that Lundt belonged to the Brotherhood Crew, that Lundt was "a significant instigator" of the attack, and that the attack grew out of a rivalry between two gangs. The two defendants obtained video surveillance tapes from the cameras at 330 and 344.  These tapes corroborated Lundt's alibi. The tapes showed Lundt leaving 344 ten minutes before the attack and then entering 330 before the attack.  They do not show Lundt leaving 330 in the short interval before the attack occurred. The Complaint asserts that ADA Sangermano and Alessandrino suppressed this exculpatory information.

During his arrest on January 11, Lundt's handcuffs were too tight and injured him.  Lundt was arraigned and released on bail that day.  At the arraignment, a prosecutor falsely stated that the videotapes corroborated the charges.  When Lundt's defense attorney explained Lundt's alibi to ADA Sangermano, Lundt

alleges that the ADA falsely told the attorney that Lundt was "not on" the 330 tape.

On February 10, Lundt was arraigned on an indictment and remanded.  In support of remand, ADA Sangermano falsely stated in court that a review of the 330 video discredited Lundt's alibi.  Lundt was released from custody on February 17.

Despite a court order to produce the videotapes to defense counsel and repeated written and oral requests from defense counsel, ADA Sangermano delayed providing the 330 tape until April 18.  On April 20, having reviewed the 330 tape, Lundt's defense attorney asserted in writing to ADA Sangermano that the tape established Lundt's alibi.  Despite representations from ADA Sangermano beginning in June that the case against Lundt was going to be dismissed, the case was not dismissed until October 6, 2011.

Lundt filed this action, pursuant to 42 U.S.C. § 1983, on March 8, 2012.  He has amended his complaint twice.  The Complaint pleads claims of false arrest, excessive force, retaliation, denial of a fair trial by the concealment of exculpatory evidence, malicious prosecution, unreasonable detention, and a Monell claim.  At a conference on December 14, 2012, the Court granted ADA Sangermano's motion to dismiss based on the legal defense of absolute prosecutorial immunity.  The

4

remaining defendants have brought this motion to dismiss all claims against them.

DISCUSSION

When considering a motion to dismiss, a court must accept as true all allegations in the complaint and draw all reasonable inferences in the plaintiff's favor. Rothstein v. UBS AG, 708 F.3d 82, 94 (2d Cir. 2013). To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citation omitted); see Ideal Steel Supply Corp. v. Anza, 652 F.3d 310, 324 (2d Cir. 2011) (recognizing that "the standards for dismissal pursuant to Rule 12(c) are the same as for a dismissal pursuant to Rule 12(b)(6)"). The court is "not bound to accept as true a legal conclusion couched as a factual allegation." Iqbal, 556 U.S. at 678. Accordingly, a court may disregard "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." Id.

Applying the plausibility standard is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Id. at 679. "Plausibility thus depends on a host of considerations: the full factual picture presented by the complaint, the particular cause of action and

5

its elements, and the existence of alternative explanations so
obvious that they render plaintiff's inferences unreasonable."
L-7 Designs, Inc. v. Old Navy, LLC, 647 F.3d 419, 430 (2d Cir.
2011).  Although the focus should be on the pleadings in
considering a motion to dismiss, the court will deem the
complaint to include "any written instrument attached to it as
an exhibit or any statements or documents incorporated in it by
reference."  Mangiafico v. Blumenthal, 471 F.3d 391, 398 (2d
Cir. 2006) (citation omitted).

A.  False Arrest; Malicious Prosecution; Wrongful Detention

In seeking the dismissal of the claims brought against
Alessandrino, the defendants principally argue that (i) the
Complaint does not deny that the investigation of the attack had
produced probable cause for the arrest and indictment of Lundt;
(ii) the decisions to arrest and prosecute Lundt were made by
the District Attorney's Office; and (iii) the production of
discovery materials, including the videotapes, during the post-
indictment period was the sole responsibility of ADA Sangermano.
To address these arguments, it is helpful as a preliminary
matter to consider the duty to weigh exculpatory information
when making an arrest and during a confinement following arrest,
and the extent to which an officer may be held liable for arrest

and prosecution decisions made by a prosecutor who is shielded
by absolute immunity.

      1.  Role of Exculpatory Evidence

      In assessing Fourth Amendment claims of false arrest and
false imprisonment brought under § 1983, courts generally look
to the law of the state in which the arrest occurred.  Russo v.
City of Bridgeport, 479 F.3d 196, 203 (2d Cir. 2007).  Under New
York state law, a claim of false arrest requires a showing that
the confinement was not privileged.  Liranzo v. United States,
690 F.3d 78, 96 (2d Cir. 2012).  Where probable cause for the
arrest exists, an arrest by a law enforcement officer is
privileged.  Jocks v. Tavernier, 316 F.3d 128, 135 (2d Cir.
2003).  "An officer has probable cause to arrest when he or she
has knowledge or reasonably trustworthy information of facts and
circumstances that are sufficient to warrant a person of
reasonable caution in the belief that the person to be arrested
has committed a crime."  Stansbury v. Wertman, 721 F.3d 84, 89
(2d Cir. 2013) (citation omitted).  The existence of probable
cause to make an arrest is determined based on what the
arresting officer "knew at the time of the arrest and
immediately before it."  Id. (citation omitted).

      An arresting officer has no duty to investigate exculpatory
defenses, or to assess the credibility of claims regarding

exculpatory defenses.   "Once a police officer has a reasonable basis for believing there is probable cause, he is not required to explore and eliminate every theoretically plausible claim of innocence before making an arrest."  Panetta v. Crowley, 460 F.3d 388, 396 (2d Cir. 2006) (citation omitted).   On the other hand, the officer may not "deliberately disregard facts known to him which establish" an exculpatory defense.   Jocks, 316 F.3d at 136.   Indeed, an officer's awareness of the facts supporting an exculpatory defense may eliminate probable cause.   Id. at 135.

To state a claim of malicious prosecution, a plaintiff must plead that a defendant initiated a prosecution against him without probable cause to believe that the proceeding can succeed, that the proceeding was begun with malice, and that the matter was terminated in the plaintiff's favor.   Cameron v. City of New York, 598 F.3d 50, 63 (2d Cir. 2010).   A lack of probable cause is sufficient to raise an inference of malice.   Id. at 69.

Similarly, when a person is physically detained following an arraignment, "he has been seized within the meaning of the Fourth Amendment."   Russo, 479 F.3d at 208 (citation omitted). The "sustained detention [of a person] stemming directly from the law enforcement officials' refusal to investigate available exculpatory evidence" violates the Fourth Amendment.   Id.   In these circumstances, a defendant's actions are unreasonable

where his conduct shocks the conscience.  Id. at 210.  While in
some circumstances this standard may require evidence that the
defendant had a purpose to cause harm, since "the government
owes a special duty of care to those in its charge" the shocks-
the-conscience standard requires a showing only that an officer
acted with "deliberate indifference" regarding a detained
inmate's exculpatory defense.  Id.

To constitute a deprivation of constitutional rights,
however, the detention must be sustained or prolonged.  Id. at
209.  As the Supreme Court has observed, the "Constitution does
not guarantee that only the guilty will be arrested.  If it did,
§ 1983 would provide a cause of action for every defendant
acquitted -- indeed, for every suspect released."  Baker v.
McCollan, 443 U.S. 137, 145 (1979).  While detention of three
days is too brief to constitute a constitutional deprivation,
id., detention for sixty-eight days or more is sufficiently
prolonged to trigger constitutional protection under the Fourth
Amendment for prolonged detention.  Russo, 479 F.3d at 209.

The facts in Russo are instructive.  The Section 1983
plaintiff had distinctive and prominent tattoos on his body,
including on his forearms.  He was arrested for a robbery after
a victim identified him in a photo array.  He remained in
custody for seven months despite videotape evidence from a

9

surveillance camera that showed conclusively that the robber had no tattoos.  There was evidence presented in the context of a summary judgment motion that the police officer defendants had intentionally and falsely represented to the plaintiff that the videotape showed that the perpetrator had tattoos that looked like the plaintiff's.  The officers also failed to follow the rules regarding storage of evidence and the processing of exculpatory evidence.  As a consequence, the officers impeded the prosecutor's access to the videotape and delayed the plaintiff's release from prison.  Id. at 206.  The Court of Appeals ruled that an officer's "duty to investigate specific, readily-verifiable claims of innocence in a reasonable time period clearly covers reviewing a surveillance camera video record of a crime, when, as here, it was an easily available piece of physical evidence".  Id. at 209.  Given the affirmative wrongdoing that led to the prolonged detention in Russo, the court found that there was sufficient evidence of "shocking conduct" to preclude summary judgment on the Fourth Amendment claim.  Id. at 210.

      2.   Intervening Acts of Prosecutor

The second legal issue of particular importance to this prong of the motion to dismiss is whether an officer's wrongful acts are actionable when the decisions at issue were made by a

prosecutor.   To be actionable, any violation of constitutional rights must proximately cause the Section 1983 injury. Consequently, if a subsequent participant in a prosecution exercises independent judgment, the chain of causation may be broken.   Higazy v. Templeton, 505 F.3d 161, 176 (2d Cir. 2007).

Police officers may be insulated from liability for a deprivation of liberty by the intervening acts of a prosecutor. Id.; see also Zahrey v. Coffey, 221 F.3d 342, 351 (2d Cir. 2000) (citing cases).   As the Court of Appeals has observed, an "initial wrongdoer might avoid liability where the intervening decision-maker would have precipitated the deprivation of liberty, even in the absence of the antecedent misconduct." Higazy, 505 F.3d at 177 (citation omitted) (discussion of but-for causation).   For the chain of causation between a police officer's unlawful arrest and a subsequent prosecution or conviction to be broken, therefore, there must be an "intervening exercise of independent judgment."   Townes v. City of New York, 176 F.3d 138, 147 (2d Cir. 1999).   That independent judgment must be untainted by "evidence that the police officer misled or pressured the official who could be expected to exercise independent judgment."   Id.   Conversely, where the subsequent participant acts in reliance on the knowingly false

11

and malicious statements of the officer, the chain of causation

is not broken.  <u>Higazy</u>, 505 F.3d at 176-77.

           3. Application to Claims of False Arrest, Malicious
              Prosecution, and Unlawful Detention

      The Complaint fails to state a claim against Alessandrino

in connection with Lundt's arrest, indictment, or detention.

The Complaint admits that Lundt was arrested following an

investigation that produced evidence sufficient to permit

Alessandrino and the prosecutor to conclude that Lundt "was a

significant instigator" of the attack.  The claims regarding

Lundt's arrest, prosecution, and incarceration rest essentially

on the assertion that Alessandrino ignored exculpatory evidence

in his possession, exculpatory evidence that demonstrated that

Lundt was not at the scene of the attack.[1]  The Complaint asserts

that two videotapes "actually exonerated" Lundt and proved his

---

[1] While the Complaint asserts generally that the arrest on
January 11, 2011 was made without probable cause, it also refers
to evidence gathered in the investigation that, by implication,
constituted probable cause to believe that Lundt was "a
significant instigator" of the attack.  The Complaint has been
carefully crafted in this regard because, apparently, both
victims of the attack had identified Lundt by name as a
participant in the attack.  The reference to the arrest being
made without probable cause is therefore understood as a
component of Lundt's argument that the arrest was not justified
since the police and prosecutor had possession of evidence that
exculpated him.

alibi, but that Alessandrino and the prosecutor "used" the videotapes to corroborate the charges against Lundt.[2]

While Lundt has adequately pleaded that Alessandrino arrested Lundt on January 11, 2011 without a warrant while in possession of evidence that would have exonerated Lundt, the claim of false arrest must be dismissed because the Complaint also pleads that the arrest was authorized by the prosecutor. The Complaint pleads that before Lundt's arrest the prosecutor had possession of the videotapes, viewed the videotapes, knew what the videotapes showed about the chronology of Lundt's travel, and had concluded that the videotapes corroborated the charges against Lundt.  While the Complaint asserts further that the Alessandrino and the prosecutor "knowingly omitted and presented false evidence" to support a false arrest, the clear inference from the Complaint is that the prosecutor had full access to the allegedly exculpatory evidence and authorized

---

[2] It will be assumed for purposes of addressing this motion to dismiss that the videotapes actually do exonerate Lundt of the crime with which he was charged even though passages in the Complaint suggest both that the charge against Lundt "as the instigator" of the attack did not require his physical presence at the attack, and that the videotape evidence could also be used to incriminate Lundt or is at least ambiguous as to his movements.  It is the defendants' view that the videotapes do not exonerate the plaintiff of the charges for which he was arrested and indicted.  For that reason, they have made the videotapes available to the Court in connection with this motion, as items integral to the Complaint.  Because the motion can be resolved without viewing the videotapes, the Court has not requested the opportunity to do so.

13

Lundt's arrest.  This is not a case, therefore, where a police officer concealed exculpatory information from a prosecutor or misled or pressured the prosecutor.  As a result, if the prosecutor has absolute immunity from any false arrest charge premised on his authorization of an arrest, then Lundt may not circumvent that immunity by bringing this claim against the investigating officer.

The claims against Alessandrino in connection with the prosecution and confinement of Lundt must also be dismissed. There is no claim that Alessandrino signed the criminal court complaint against Lundt or gave false testimony to the grand jury, which would in any event be privileged.  See Rehberg v. Paulk, 132 S.Ct 1497, 1506 (2012).  It was, of course, the responsibility of prosecutors to make the decision whether to seek an indictment, to address the court during court appearances, including at bail arguments, and to provide defense counsel with discovery materials.  Again, there is no allegation that Alessandrino withheld the videotapes from the prosecutor's office.  To the contrary, the Complaint explains that the prosecutor himself viewed the videotape evidence and drew his own conclusions from it.

Finally, Lundt asserts that the prosecutor and Alessandrino conspired to falsely accuse Lundt.  "Since plaintiff cannot

14

establish a claim for false arrest . . . he may not maintain a § 1983 cause of action for conspiracy." <u>Curley v. Village of Suffern</u>, 268 F.3d 65, 72 (2d Cir. 2001).

B. Excessive Force

The next claim against Alessandrino is the claim of excessive force.  The Complaint pleads that the handcuffs were too tight at the time of the arrest but does not identify Alessandrino as having any role in placing the handcuffs on Lundt, as learning that they were too tight, or as failing to intervene when that became apparent to him.  In such circumstances, this claim against Alessandrino must be dismissed and it is unnecessary to separately address whether the Complaint adequately pleads the use of excessive force.[3]

C. First Amendment Claim

Lundt asserts that Alessandrino and ADA Sangermano violated his First Amendment rights.  Lundt asserts that his request that these two defendants explain the basis for their unlawful actions and his statements that he had an alibi that exonerated

---

[3] The Complaint does not describe any injuries that Lundt sustained as a result of the handcuffs being too tight.  It is reasonable to infer that he seeks to recover damages for the pain experienced while the handcuffs were on his wrists.  It appears that Lundt is not claiming any permanent or serious injuries; he did not produce any medical releases as required by the District's Section 1983 Plan.

him were a "motivating" factor in their decisions to arrest and prosecute him.[4]

The elements of a First Amendment retaliation claim have been described in varying ways, depending on the particular context of the case. Zherka v. Amicone, 634 F.3d 642, 644 (2d Cir. 2011) (citation omitted).[5] The circumstances here most closely parallel those involving a private citizen plaintiff who claims retaliation by a public official on account of protected speech. In that context, to state a First Amendment retaliation claim, a plaintiff must plead that "(1) he has an interest protected by the First Amendment; (2) defendants' actions were motivated or substantially caused by his exercise of that right; and (3) defendants' actions effectively chilled the exercise of his First Amendment right." Kuck v. Danaher, 600 F.3d 159, 168 (2d Cir. 2010) (citation omitted). While in limited circumstances, some forms of harm other than "chilling" have

---

[4] While the First Amendment retaliation claim also asserts that the decisions to arrest and prosecute Lundt were motivated by his refusal to cooperate against his co-defendants or to become an informant, there are no facts alleged in the body of the Complaint to support this aspect of the claim or to identify any individual defendant as associated with the facts underlying this claim.

[5] Public employees, for example "must show adverse employment action," while "inmates must show retaliatory conduct that would deter a similarly situated individual of ordinary firmness from exercising constitutional rights." Zherka, 634 F.3d at 644-45 (citation omitted).

been accepted in public official retaliation cases, "as a general matter, First Amendment retaliation plaintiffs must typically allege 'actual chilling'" of their speech.  Zherka, 634 F.3d at 645.  In any event, regardless of the factual context of the particular case, "plaintiffs who allege a violation of their right to free speech must prove that official conduct actually deprived them of that right."  Williams v. Town of Greenburgh, 535 F.3d 71, 78 (2d Cir. 2008); see Dillon v. Morano, 497 F.3d 247, 251 (2d Cir. 2007) (requires a showing in the employment context a "causal connection" between the protected activity and the adverse action); Gill v. Pidlypchak, 389 F.3d 379, 384 (2d Cir. 2004) (same in prison context).

Lundt's First Amendment claim arises in the context of a criminal prosecution, where a defendant has a Sixth Amendment right to counsel and counsel has a duty zealously to advocate for his client.  Lundt has not alleged facts indicating that he was deprived of his constitutionally protected right to free speech.  Nothing in the Complaint suggests that Lundt's speech was "actually chilled" or that he was ever precluded by Alessandrino or any other individual from exercising his First Amendment rights.  Kuck, 600 F.3d at 168.  The acts of which he complains are those normally attendant to criminal prosecutions, and nothing in the Complaint suggests that Lundt or Lundt's

17

attorney, whose duty it was to advocate for Lundt, suffered any retaliation.

The first prong of Lundt's First Amendment claim is also dismissed on the ground that it does not pertain to Alessandrino.  The Complaint does not assert that Lundt ever demanded that Alessandrino explain the basis for his arrest. While the Complaint does describe the demands made by Lundt's defense counsel of ADA Sangermano, these do not provide a basis to bring a retaliation claim against Alessandrino.

Lundt's second claim, that his arrest by Alessandrino was motivated by Lundt's assertion of an alibi, must also be dismissed.  For the reasons described above, there was an intervening cause between Lundt's description of his alibi to Alessandrino and Lundt's arrest.  During the interval between Lundt's interview by Alessandrino and Lundt's arrest some time later, ADA Sangermano obtained and reviewed the two videotapes and took charge of the prosecution.  The Complaint charges ADA Sangermano, along with Alessandrino, with Lundt's false arrest and with retaliating against him for his assertion of an alibi. In these circumstances, the prosecutor's role in the arrest defeats any claim against Alessandrino pursuant to the First Amendment.  See Reichle v. Howards, 132 S.Ct 2088, 2095 (2012) (in a retaliatory prosecution case, "the intervening decision of

18

[a] third-party prosecutor widens the causal gap between the defendant's animus and the plaintiff's injury").

  D.  Monell Claim

  The Complaint also asserts a claim against the City pursuant to Monell v. Dep't of Soc. Servs., 436 U.S. 658 (1978). "Section 1983 'imposes liability on a government that, under color of some official policy, causes an employee to violate another's constitutional rights.'" Okin v. Village of Cornwall-on-Hudson Police Dep't., 577 F.3d 415, 439 (2d Cir. 2009) (quoting Monell, 436 U.S. at 692).

> Monell does not provide a separate cause of action for the failure by the government to train its employees; it extends liability to a municipal organization where that organization's failure to train, or the policies or customs that it has sanctioned, led to an independent constitutional violation.

Id. (citation omitted). As a result, to state a Monell claim against a city for the unconstitutional actions of its employees, "a plaintiff is required to plead . . . three elements: (1) an official policy or custom that (2) causes the plaintiff to be subjected to (3) a denial of a constitutional right." Wray v. City of New York, 490 F.3d 189, 195 (2d Cir. 2007).

  An "official policy or custom" may be established through the official acts of city lawmakers or "those whose edicts or

acts may fairly be said to represent official policy," <u>Monell</u>, 436 U.S. at 694, or by a pattern of misconduct that is "sufficiently persistent or widespread" as to "compel[] the conclusion that the local government has acquiesced in or tacitly authorized its subordinates' unlawful actions." <u>Reynolds v. Guiliani</u>, 506 F.3d 183, 192 (2d Cir. 2007).

The Complaint's <u>Monell</u> allegations are pleaded in conclusory language.  It asserts, for instance, that the violations of the plaintiff's rights "are not an isolated incident," that the City is aware from lawsuits that members of the police force and district attorney's office "are insufficiently trained on the proper way to investigate and prosecute crimes," and that the City's employees in these offices are "recklessly supervised."  In light of the dismissal of all claims against ADA Sangermano and against Allesandrino, and the absence of a factual basis to find that any violation of Lundt's rights was due to a municipal policy or practice, or a municipal official with policy-making authority, the <u>Monell</u> claim must be dismissed.

E.  Leave to Amend

Finally, Lundt requests leave to amend.  Pursuant to Rule 15(a)(2), Fed. R. Civ. P., courts "should freely give leave [to amend] when justice so requires."  But in a case where a

scheduling order has been entered setting a deadline for any amendment, as here, the lenient standard of Rule 15(a) is replaced by the Rule 16(b) standard, which prohibits amendment except upon a showing of "good cause."  Rule 16(b)(4), Fed. R. Civ. P.  Rule 16 "is designed to offer a measure of certainty in pretrial proceedings, ensuring that at some point both the parties and the pleadings will be fixed."  Parker v. Columbia Pictures Indus., 204 F.3d 326, 340 (2d Cir. 2000) (citation omitted).  Therefore, a finding of good cause "turns on the diligence of the moving party."  Holmes v. Grubman, 568 F.3d 329, 334 (2d Cir. 2009) (citation omitted).  "It is within the sound discretion of the district court to grant or deny leave to amend."  WC Capital Mgmt., LLC v. UBS Secs., LLC, 711 F.3d 322, 334 (2d Cir. 2013) (citation omitted).

The procedural history in the action is as follows.  This action was filed on March 8, 2012, and answered on June 25.  On June 26, the Court scheduled an initial pretrial conference for December 14.  This date permitted the parties to participate first in the automatic disclosure and mediation regime established by this District's Section 1983 Plan.

In a detailed, six-page letter of June 26, counsel for the defendants described their grounds for moving to dismiss this action and requested that discovery be stayed and that the

plaintiff be given an opportunity to amend the complaint.  An
endorsement of July 9 allowed the plaintiff an opportunity to
amend his pleading to address any of the issues raised in the
letter, but denied the request to stay discovery.  On July 18,
the plaintiff filed his first amended complaint.  It was
answered on August 1.  On September 14, the defendants moved to
dismiss the complaint.  In an order of September 18, the
plaintiff was given an opportunity to either amend his pleading
once more or to oppose the motion.  He was warned, however, that
he would have no further opportunity to amend the pleading.

On October 5, the plaintiff filed a second amended
complaint.  On October 12, the defendants filed a motion to
dismiss.  A stay of further discovery was entered on October 25.
At the December 14 conference, as described above, the claims
against ADA Sangermano were dismissed on the record based on his
defense of absolute immunity.  Following a schedule to which the
parties agreed at the conference, the defendants filed on
February 4, 2013, the pending motion to dismiss pursuant to Rule
12(c).

The plaintiff has not shown good cause for allowing a third
amendment to his complaint.  He has been given notice on at
least four occasions of the defendants' arguments regarding the
deficiencies in his pleading.  He has been given multiple

22

opportunities to amend his pleading, and was warned that he would be given no further opportunity to amend.  And, tellingly, he has not provided a proposed amended complaint or otherwise identified how he would cure any of the deficiencies in his Complaint.[6]  See WC Capital, 711 F.3d at 334 (supporting rejection of a request to amend when no proposed amended complaint is provided).  Nor has he explained why he has not already had an opportunity to make any such change. Accordingly, plaintiff's request to amend is denied.


                              CONCLUSION

     The defendants' February 20, 2013 motion to dismiss is granted.  The Clerk of Court shall close this case.


     SO ORDERED:

Dated:     New York, New York
           September 20, 2013
                                   _____
                                         DENISE COTE
                                   United States District Judge


_____

[6] The only claim that might survive after a further amendment is the allegation regarding the excessively tight handcuffs.  If Lundt had identified an officer associated with that alleged use of excessive force, then it would have been necessary to examine whether the pleading of that claim was sufficient.  Lundt has not indicated, however, that he needs any further discovery to identify the officer or officers involved, or in any other way indicated that it is this claim which he wishes to amend.

23